Norman Jester, Joseph Kollock, and Frank Dawson, Composing the Board of Assessment of Sussex County; Louis V. Spencer, Receiver of Taxes and County Treasurer for Sussex County; and Clarence Lingo, Levi Warrington, and Victor Adams, Composing the Levy Court of Sussex County,

Appellants,

*vs.*

Commissioners of Lewes,
Appellee.

Norman Jester, Joseph Kollock, and Frank Dawson, Composing the Board of Assessment of Sussex County; Louis V. Spencer, Receiver of Taxes and County Treasurer for Sussex County; Clarence Lingo, Levi Warrington, and Victor Adams, Composing the Levy Court of Sussex County,

Appellants,

*vs.*

The City of Seaford, a municipal corporation of the State of Delaware,
Appellee.

*Supreme Court of Delaware, July 22, 1957.*

*Daniel J. Layton, Sr.,* and *H. Edward Maull,* Georgetown, for appellants.

*James M. Tunnell, Jr.,* and *J. W. Raysor,* of Tunnell & Tunnell, Georgetown, for appellees.

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.

SOUTHERLAND, Chief Justice: This case presents a single question: Is all the real estate of a municipality in this State used for public purposes impliedly exempt from county taxation, or does the implied exemption extend only to property used for governmental purposes?

In the court below two municipalities in Sussex County, Lewes and Seaford, sued for a judgment declaring their properties exempt from county taxation. The Vice Chancellor was of the opinion that since all the properties owned by the municipalities were used for public purposes, they were all impliedly exempt from county taxation. He therefore gave judgment for the municipalities. The county officials charged with the duty of levying, assessing and collecting county taxes appeal.

Article VIII, Section 1 of the Delaware Constitution, *Del.C.Ann.,* provides:

"All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and

shall be levied and collected under general laws, but the General Assembly may by general laws exempt from taxation such property as in the opinion of the General Assembly will best promote public welfare."

9 *Del.C.* § 8101 provides:

"All real property situated in this State shall be liable to taxation and assessment for public purposes by the county in which the property is located, except as otherwise provided in this chapter."

9 *Del.C.* § 8103 provides:

"Property belonging to this State, or the United States, or any county of this State, or any church or religious society, and not held by way of investment, or any college or school and used for educational or school purposes, or any corporation created for charitable purposes and not held by way of investment, except as otherwise provided, shall not be liable to taxation and assessment for public purposes by any county or other political subdivision of this State."

The last-quoted section is not, strictly speaking, an exemption statute. It deals with property not subject to taxation because of its use by the sovereign for governmental purposes. It embodies the general principle that the sovereign cannot sensibly be thought to intend to tax its own property, since it would then have to levy a second tax to pay the first one. And the county authorities concede that municipal property used for governmental purposes as an agent of the sovereign is also not subject to taxation. But municipal property held in a proprietary capacity, they say, is taxable under § 8101 unless specifically exempted by the General Assembly. (The exemption statutes are considered hereafter.)

The particular property of the municipalities here sought to be taxed by the county authorities consists largely of property used for the purpose of supplying electricity and water to the inhabitants of the two cities. It also includes a few undeveloped lots held for incidental public uses, only one of which, a lot in the City of Seaford, is used

(or shortly to be used) for governmental purposes—as the site of a new city hall. The Sussex County authorities concede that this lot is not subject to county taxation.

The municipalities contend that an implied exemption from county taxation extends to all property of a municipality devoted to public use. In practice, of course, this rule, if accepted, would exempt from county taxation practically all municipal property.

Rather sweeping statements may be found in the text books, and indeed in some of the decisions, to the effect that taxing statutes by implication are intended to apply only to private property and that any property owned by a municipality and devoted to any public purpose is exempt from taxation. See 16 *McQuillin, 3rd Ed., Municipal Corporations,* § 44.57; 4 *Dillon, 5th Ed., Municipal Corporations,* § 1396; 2 *Cooley, 4th Ed., Taxation,* § 621; *City of Marlin v. State, Tex.Civ. App.,* 205 *S.W.2d* 809; *Jamouneau v. Division of Tax Appeals,* 137 *N.J.L.* 384, 60 *A.2d* 96.

But many of the decisions cited by the text writers are cases in which the statute contains, or is construed to contain, an exemption of property held "for public purposes". See the review of cases holding exempt all municipal property used for public purposes in the case of *City of Providence v. Hall,* 49 *R.I.* 230, 142 *A.* 156. That case concerned the right of one town to tax property within its borders, consisting of a water works and reservoir, belonging to another town. The Rhode Island taxing and exemption statutes were similar to our own. All real property in the state was declared to be taxable "unless otherwise specifically provided". G.L.R.I. 1923, c. 58, §1. The statute also provided that "the following property shall be exempt from taxation" § 2—and then enumerated specific exemptions. Municipal property was not specifically exempted.

The court treated the question as one of statutory construction. Property of the state or city used in performing governmental functions, the court said, is non-taxable, not by reason of an exemption statute, but by reason of its use in performing duties delegated to the municipality by the sovereign. As to property devoted to non-govern-

mental uses liability is presupposed, and non-liability must depend upon an exemption in the strict sense of the term.

The court reviewed a large number of decisions in other states, and concluded, as we do here, that the general statements in many of the decided cases declaring exempt all municipal property used for public purposes are based upon statutes providing for such an exemption. The court held that the city, in furnishing water, was not engaged in a governmental function and that the water system and reservoir were subject to taxation.

The decision is in point. We view this case at bottom as one of statutory construction. None of our exemption statutes (9 *Del.C.* §§ 8104-8106) contains any exemptions of municipally-owned property, with one significant exception. Section 8105 specifically exempts "Public parks in and near Wilmington". The maintenance of a public park has been held by our Superior Court, in a case involving municipal liability for torts, to be a proprietary function. *Pennell v. City of Wilmington, 7 Penne. 229, 78 A. 915.* The inference is that a special act of exemption was required for parks, at least those within the City of Wilmington.

The *Pennell* decision, like many other Delaware decisions, and like the *Hall* case, *supra,* gives effect to the well-settled distinction between the "governmental" and "proprietary" functions of a municipality.

We had occasion recently to consider this distinction in a case involving the liability of a municipality for torts. See *Flait v. Mayor & Council of Wilmington, 9 Terry 89, 48 Del. 89, 97 A.2d 545.* An appealing argument was made that it was illogical and should be abandoned. We held that it was too firmly grounded in our law to be disregarded. We took occasion to point out the unsatisfactory nature of the distinction. Where is the line to be drawn between "governmental" and "proprietary"? Border line cases, as where a building is used for both purposes, present difficulty. 16 McQuillin, *Municipal Corporations* § 53.32. But, at least in the law of torts, it is well settled that the maintenance of municipal water and light plants is a proprietary and not a governmental function (18 McQuillin,

*Municipal Corporations,* § 53.30) and that distinction was adhered to in the *Hall* case above discussed, involving liability for taxation. Our Superior Court has followed the same rule in a tort case. *Fine v. Mayor & Council of Wilmington,* 8 *Terry* 539, 47 *Del.* 539, 94 *A.2d* 393.

■ We are of opinion that the distinction between property used for governmental purposes and property held in a proprietary capacity is so well established in the law that it cannot be ignored in the field of taxation. But in so holding we expressly do not wish to be understood as approving all of the applications of this distinction found in our decisions. Thus, for example, we expressly do not hold that public streets of a municipality, owned by the municipality, are subject to taxation or that in modern times the maintenance of a public street is not a governmental function. This question is not before us, for all of the properties in this case (with the exception of the Seaford lot to be used as a site for a new city hall) appear to consist of (1) public utilities and (2) property held for future expansion.

■ The municipalities' case really comes to this : That we should either ignore the concept of governmental as opposed to proprietary functions in the law of municipal corporations, or expand it to include all public uses of municipal property. To adopt either approach would, we think, involve unwarranted departure from settled rules of law. The municipalities suggest that such a rule would have the merit of logic and justice. This may be so. Possibly the public interest might be better served by abolishing the distinction and exempting all municipal property from taxation, as seems to have been done in many states by constitutional or statutory provisions. But if that is to be done, it must be done by the General Assembly.

■ We are of opinion that the real estate of the municipalities here involved is subject to county taxation.

It follows that the judgments below must be reversed. The cause is remanded to the Court of Chancery of Sussex County, with instructions to vacate the judgments of December 6, 1956, and to enter judgments in accordance with this opinion.