FERDINAND WEISBROD ET AL., PLAINTIFFS, v. TOWNSHIP OF SPRINGFIELD, DEFENDANT.

Tax Court of New Jersey

October 29, 1980.

584

*Walter R. Cohn* for plaintiffs.

*Morley, Cramer, Tansey, Haggerty & Fanning* for defendant (*Gerard P. Herman* appearing).

HOPKINS, J. T. C.

This matter, as originally instituted by the plaintiff, contested the constitutionality of *N.J.S.A.* 46:8B–1 *et seq.*, and in particular, *N.J.S.A.* 46:8B–19 which, in substance, treated a condominium unit the same as an individual residence for the purpose of local property taxes, special assessments and other charges imposed by any taxing authority.

Defendant has moved for summary judgment on the ground that the Tax Court, being a court of limited jurisdiction, does not have authority to pass upon the constitutionality of the aforesaid statute. In so doing, defendant has relied upon the legislation creating the Tax Court.

The Tax Court was created by the Legislature pursuant to its constitutional authority. *N.J.Const.* (1947), Art. VI, § 1, par. 1, as amended by general election November 7, 1978, reads as follows:

> I. Judicial power; jurisdiction of courts other than Supreme and Superior Courts
>
> 1. The judicial power shall be vested in a Supreme Court, a Superior Court, ~~County Courts~~ and ~~inferior~~ other courts of limited jurisdiction. The ~~inferior~~ other courts and their jurisdiction may from time to time be established, altered or abolished by law.

The amendment substituted "other" for "inferior" and deleted "County Courts".

*N.J.S.A.* 2A:3A–1, –3, which are the pertinent statutory provisions creating the Tax Court, read as follows:

> A tax court is hereby established as an inferior court of limited jurisdiction, pursuant to Article VI, Section I, paragraph 1 of the New Jersey Constitution.

. . . . . . . .

> The tax court shall be a court of record, having a seal, and shall have jurisdiction to hear and determine all tax appeals of such character as now are taken to, and heard and determined by, the Division of Tax Appeals in the Department of the Treasury. Practice and procedure in the tax court shall be as provided by rules of the Supreme Court.

Defendant has concluded from the fact that the Tax Court was created as an inferior court of limited jurisdiction and that this jurisdiction was limited to the same jurisdiction previously delegated to the Division of Tax Appeals, that the Tax Court's power is necessarily limited to the power previously exercised by the Division of Tax Appeals.

The use of the word "inferior" in the Constitution, as well as in *N.J.S.A.* 2A:3A-1, and the impact, if any, on its deletion by the constitutional amendment in 1978, have been considered by the court.

The word "inferior" as used to describe courts has a long history. In *Kempe's Lessee v. Kennedy*, 9 *U.S.* 173, 5 *Cranch* 173, 3 *L.Ed.* 70 (1809), Chief Justice Marshall noted that the words "inferior court" had two meanings, a technical common-law meaning and a more general meaning:

> The law respecting the proceedings of inferior courts, according to the sense of that term as employed in the English books, has been correctly laid down. The only question is, was the court, in which this judgment was rendered, "an inferior court," in that sense of the term?
>
> All courts from which an appeal lies are inferior courts, in relation to the appellate court before which their judgment may be carried; but they are not, therefore, inferior courts, in the technical sense of those words. They apply to courts of a special and limited jurisdiction, which are erected on such principles, that their judgments, taken alone, are entirely disregarded, and the proceedings must show their jurisdiction. The courts of the United States are all of limited jurisdiction, and their proceedings are erroneous, if the jurisdiction not be shown upon them. Judgments rendered in such cases may certainly be reversed, but this court is not prepared to say that they are absolute nullities, which may be totally disregarded. [at 184–185; footnote omitted]

The distinction between "inferior courts" in the technical sense of the English common law and in the general sense of their judgments being subject to appeal was affirmed in *McCor-*

*mick v. Sullivant,* 23 *U.S.* 192, 10 *Wheat.* 192, 6 *L.Ed.* 300 (1825) and *Ex parte Watkins,* 28 *U.S.* 191, 3 *Pet.* 193, 7 *L.Ed.* 650 (1829).

The distinction was also adopted by the New Jersey courts as noted in *Hess v. Cole,* 23 *N.J.L.* 116 (Sup.Ct.1851), wherein the court stated:

> The Orphans' Court, as established in this state, is not a tribunal of general jurisdiction. Its jurisdiction does not extend to all persons nor to every subject matter. In this sense its jurisdiction is limited. And in the same sense the courts for the trial of small causes, the Court of Common Pleas, and even the Circuit Court of the United States, are courts of limited jurisdiction. But they are not, in the technical sense of the term, inferior courts or courts of special jurisdiction, whose proceedings are subject to the narrowest rules of construction, and whose judgments will be deemed invalid for every irregularity apparent in their proceedings. . . . [at 121]

The well established distinction between inferior courts, in the technical sense of the word, and inferior courts in the sense that their judgments were subject to review by an appellate court, was in existence at the time of the adoption of the Constitution of 1947. It should be noted that at the public hearings on the amendment to the Constitution, as approved by the general election of 1978, Justice Nathan L. Jacobs, who was a delegate to the 1947 constitutional convention, testified that the word "inferior", as used in the 1947 Constitution, was intended to mean the lower state courts without any reflection on the capacity of any particular judge. *Proposed Constitutional Amendments to Merge the Superior Courts and County Courts: Hearings on A.C.R. No. 38 before the Assembly, Judiciary, Law, Public Safety and Defense Committee* (March 29, 1978). This statement is consistent with the history of the judicial definition of the word "inferior" commencing with Justice Marshall's opinion in *Kempe's Lessee v. Kennedy, supra.* As such, the word "inferior" in the 1947 Constitution was used in the general sense.

The above history of the word "inferior" clearly shows that its use in the 1947 Constitution did not affect the capacity of constitutionally authorized courts to pass on constitutional questions. Accordingly, the 1978 amendment deleting "inferior"

from Art. VI, § 1, par. 1, had no impact on the judicial power of inferior courts.

■ With respect to the movant's argument that the Tax Court's judicial power is affected by the jurisdictional limitation of tax appeals formerly heard and determined by the Division of Tax Appeals, it must be recognized that the Tax Court is a constitutionally authorized court and, as such, a member of the judicial family of the State of New Jersey. The Division of Tax Appeals was created by the legislature as an administrative tribunal. It had long foresworn the authority of deciding the constitutionality of a state statute. *Erie Railroad System v. Walsh*, 25 *N.J.Misc.* 269, 53 *A.2d* 155 (Div.Tax App.1947); *Jamouneau v. Newark*, 25 *N.J.Misc.* 345, 53 *A.2d* 620 (Div.Tax App.1947), *aff'd* 137 *N.J.L.* 384, 60 *A.2d* 96 (Sup.Ct.1948) rev'd on other grounds, 2 *N.J.* 325, 66 *A.2d* 534 (1949). This position had been supported by the courts in holding that the determination of the constitutionality of an act of the legislature rests with a judicial body alone. *Schwartz v. Essex Cty. Bd. of Taxation*, 129 *N.J.L.* 129, 28 *A.2d* 482 (Sup.Ct.1942) *aff'd* 130 *N.J.L.* 177, 32 *A.* 2d 354 (E&A 1943). Clearly, however, the demarcation of the subject matter jurisdictional limits in which the Tax Court could exercise its judicial power cannot support a conclusion that because those parameters were the same as the subject matter jurisdiction exercised by the former Division of Tax Appeals, it necessarily follows that the Tax Court is not a court.

It is most appropriate to note the various legislative enactments which distinguish the Tax Court from the Division of Tax Appeals. The Tax Court is a court of record, having a seal, and its practices and procedures are as provided by the rules of the Supreme Court. *N.J.S.A.* 2A:3A–3. It may grant legal and equitable relief so that all matters in controversy may be determined. *N.J.S.A.* 2A:3A–4. Its judges are appointed by the Governor with the advice and consent of the Senate. *N.J.S.A.* 2A:3A–11. Its presiding judge is appointed by and is subject to the supervision of the Chief Justice. *N.J.S.A.* 2A:3A–14. The term of office is co–extensive with judges of the Superior Court,

and Tax Court judges can be impeached in the same manner as Superior Court judges. *N.J.S.A.* 2A:3A–15, –16. Further, the Tax Court may compel obedience to its process, orders, judgments and sentences in contempt, as fully and amply as the Superior Court. *N.J.S.A.* 2A:3A–22.

The County District Courts were created by the Legislature under the same constitutional provisions authorizing the creation of the Tax Court. Indeed, subsequent to the adoption of the 1947 Constitution, the Legislature enacted *N.J.S.A.* 2A:6–1 which continued County District Courts in existence. In *Jamouneau v. Harner*, 16 *N.J.* 500, 109 *A.*2d 640 (1954), in a discussion relative to the jurisdiction of the Essex County District Court to pass on the constitutionality of the State Rent Control Act of 1953, which was presented on a motion for summary judgment pursuant to the Declaratory Judgments Act, *N.J.S.A.* 2A:16–52, the Supreme Court went into great detail in describing the judicial power of the County District Court. Recognizing that *R.R.* 4:88–10 provided that review of the validity of any administrative rule promulgated by an administrative agency should be by petition for a declaratory judgment addressed to the Appellate Division, it pointed out that the statute was also being attacked and, as such, the action was within the purview of the Declaratory Judgments Act, *N.J.S.A.* 2A:16–52. That Act provided for declaratory judgment relief in all "courts of record" in New Jersey. The Supreme Court, in describing the County District Courts, stated:

> And the county district courts are "courts of record" thus empowered by section 2A:16–52. Although a court of limited rather than general jurisdiction, the county district court is nevertheless a court of record, for it proceeds in the main according to the course of the common law; it is not a special tribunal; it has power to determine its own jurisdiction, and the record of its proceedings and the judgment import absolute verity, and every intendment is made in favor of its judgments. These are the essential attributes of courts of record.... [16 *N.J.* at 511, 109 *A.*2d 640]

Indeed, County District Courts have passed upon claims of unconstitutional legislation. *Freedom Finance v. N.J. Bell Tel.,* 123 *N.J.Super.* 255, 302 *A.*2d 184, (Cty.D.Ct.1973) *aff'd* 126 *N.J.Super.* 375, 314 *A.*2d 614 (App.Div.1974).

■ It must be recognized, however, that the power to pass upon a constitutional issue is not to be exercised lightly. There are viable principles which require restraint. *Blair v. Erie Lackawanna Ry. Co.*, 124 *N.J.Super.* 162, 305 *A.2d* 446 (Law Div. 1973) and cases cited therein delineate the areas of restraint. While it is true that these areas are more applicable to trial courts than to appellate courts, they are not prohibitions. In effect, a trial court should reach a constitutional issue only as a matter of last resort and, further, uphold the validity of a statute unless it is so clearly in contravention of the constitution that there can be no reasonable doubt about it.

■ Based upon the foregoing discussion, it is clear that the Tax Court has the judicial power to pass upon the constitutionality of a statute where that statute is properly within the sphere of the Tax Court's subject matter jurisdiction.

The motion is denied. Movant will submit form of order, consistent with this opinion, as provided by *R.* 4:42–1.